Death Opinion







 






IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,590





 

KIMBERLY LAGAYLE MCCARTHY, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM DALLAS COUNTY






 Cochran, J., delivered the opinion of the Court, joined by Keller, P.J., and
Meyers, Price, Womack, Johnson, Hervey, and Holcomb, JJ. Keasler, J., not
participating.


O P I N I O N




 Appellant was convicted in November 2002 of capital murder. Tex. Penal Code Ann.
§ 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to
death. Art. 37.071 § 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071 § 2(h). 
Appellant raises fifteen points of error. We affirm.

 In her first point of error, appellant claims the trial court erred by denying her challenge
for cause against prospective juror Donald Scott in violation of the Sixth, Eighth, and
Fourteenth Amendments to the United States Constitution and Article 35.16. In her second
point of error, appellant claims the trial court abused its discretion in denying her challenge
for cause against prospective juror Joe Fox. Appellant used all of her peremptory strikes and
the trial court granted two additional strikes. After appellant used the additional strikes, she
requested more, but the trial court denied that request. She identified an objectionable juror
she had to accept. Chambers v. State, 866 S.W.2d 9, 22-23 (Tex. Crim. App. 1993).

 When the trial court erroneously overrules a challenge for cause, a defendant is harmed
if he uses a peremptory strike to remove the challenged venireperson and thereafter suffers
a detriment. Sells v. State, 121 S.W.3d 748, 758 (Tex. Crim. App.), cert. denied, 124 S.Ct.
511 (2003); Feldman v. State, 71 S.W.3d 738, 743-44 (Tex. Crim. App. 2002). The record
reflects that appellant received two extra peremptory strikes. Therefore, appellant can show
harm only if at least three complained-of challenges were erroneously denied. Sells, 121
S.W.3d at 758. Appellant complains of just two overruled challenges for cause. Regardless
of any error in the trial court's ruling on these challenges for cause, appellant has failed to
show she was harmed. Points of error one and two are overruled.

 In her third point of error, appellant claims the evidence is legally insufficient to
support the jury's verdict, beyond a reasonable doubt, that she would commit criminal acts of
violence that would constitute a continuing threat to society. Appellant argues that nothing in
the facts of the instant offense or in the evidence of extraneous offenses and bad acts supports
a conclusion that she would constitute a continuing danger to prison society.

 The term "society" within this context encompasses both the prison population and the
free population. Hall v. State, 67 S.W.3d 870, 873 (Tex. Crim. App. 2002). Thus, the
State has the burden of proving beyond a reasonable doubt that there is a probability that
appellant, if allowed to live, would commit criminal acts of violence in the future, so as to
constitute a continuing threat, whether in or out of prison. Conner v. State, 67 S.W.3d 192,
199 (Tex. Crim. App. 2001). As a reviewing court, we view all of the evidence before the jury
in the light most favorable to its finding to determine whether, based on that evidence and
reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt
that the answer to the first punishment issue was "yes." Id. 

 The evidence at the guilt stage reflected that appellant and the 71-year-old victim,
Dorothy Booth, were neighbors. Mrs. Booth let appellant into her house to lend her some
sugar. Appellant stabbed Mrs. Booth five times, hit her in the face with a candelabrum, cut off
her left ring finger in order to take her diamond ring, and nearly severed her left little finger
as well. Appellant left with Mrs. Booth's purse, returned home, and cleaned up. She then drove
Mrs. Booth's Mercedes Benz to a "crack house" where she attempted to purchase crack
cocaine. Witnesses who saw appellant at the "crack house" on the morning after the murder
testified that she was calm, did not appear to be on drugs, and was dressed for work. She
pawned Mrs. Booth's wedding ring for $200, and used the victim's credit cards at least four
times on the day after the murder.

 At the punishment phase of the trial, the State presented evidence that appellant had
murdered two other elderly women in 1988. One of these victims had been a long-time friend
of appellant's mother who had agreed to store some of appellant's furniture in her garage. The
other victim was a distant relative of appellant. Both women suffered multiple blunt force
injuries and stab wounds. The only items taken from the victims were their purses and credit
cards. The State also presented evidence that appellant was convicted of forgery in 1988,
prostitution in 1990, and theft of services in 1996. Finally, the State presented evidence that
appellant committed some infractions while in prison, including the refusal to turn over her
razor to a guard after showering, and an incident in which she threatened another inmate.

 Appellant presented evidence that her crimes resulted from her addiction to crack
cocaine and the need for cash to support the addiction. Appellant also presented testimony of
a psychologist that there was a 9.4 to 14.7 percent chance that she would commit future acts
of violence. 

 Based upon the brutal and calculated nature of appellant's conduct in committing the
instant offense, the two extraneous murders in which appellant used her position of trust with
the elderly victims to gain entry into their homes, the brutal nature of those offenses, and other
bad acts, including violating prison rules, a rational trier of fact could conclude beyond a
reasonable doubt that appellant would commit criminal acts of violence that would constitute
a continuing threat to society. Point of error three is overruled.

 In points of error four through seven, appellant claims the trial court abused its
discretion by admitting into evidence inflammatory autopsy photographs. According to
appellant, all of the complained-of photos were color images projected before the jury on a
"giant-size television screen." The first complained-of group of photos, Exhibits 92, 93, 94,
95, 97, and 98, are autopsy photos of Mrs. Booth, admitted into evidence at the guilt phase. 
Appellant argues that because the manner and means of Mrs. Booth's death was not contested
and the medical examiner was able to communicate the nature and extent of the injuries
without the aid of the photos, the photos did not assist the jurors but served only to inflame
them. In these circumstances, appellant contends, the danger of unfair prejudice substantially
outweighed any probative value. 

 Appellant also complains of Exhibits 181 through 187, autopsy photos of Maggie
Harding, the victim of an extraneous murder, and Exhibits 189 through 193, autopsy photos of
Lettie Lucas, the victim of another extraneous murder, which were admitted at the punishment
phase of the trial. Appellant argues that the manner and means of Harding's and Lucas' deaths
were not contested, the photos were "entirely cumulative" of the medical examiner's testimony
regarding the causes of the victims' deaths, and merely served to inflame the jury.

 The admissibility of a photograph is within the sound discretion of the trial judge. 
Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Autopsy photographs are
generally admissible unless they depict mutilation caused by the autopsy itself. Hayes v.
State, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002); Salazar v. State, 38 S.W.3d 141, 151
(Tex. Crim. App. 2001). Proper analysis under Rule of Evidence 403, in weighing the
probative value of a photo against its prejudicial effect, includes but is not limited to: (1) the
probative value of the evidence; (2) the potential to impress the jury in some irrational, yet
indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for
the evidence. Erazo v. State, No. 2206-02, slip op. at 3-4 (Tex. Crim. App. June 16, 2004). 
We also consider the form, content, and context of the photos at issue. Id. at 9.

 Each of these photos depicts a different injury or group of injuries to different parts of
the victims' bodies. The photos were referred to by the medical examiner when discussing the
various injuries and the probable manner and means of the injuries and causes of death. 
Contrary to appellant's assertions, Mrs. Booth's cause of death was a fact issue for the jury to
resolve at the guilt phase, and the manner, means, extent and nature of all of the victims'
injuries were factors for the jury to consider in addressing, at punishment, the issue of
appellant's future dangerousness. The photos were not duplicative or cumulative, and served
to aid the medical examiner's explanation of issues relevant to the State's case. Thus, the
photos were probative of matters that the State was required to prove and were helpful in
assisting the jury to visualize the evidence and weigh it accordingly. Although testimony
relating to the victims' injuries was extensive, little additional time was expended in admitting
the photos. And while the photos were graphic in their depiction of the injuries inflicted on
the victims, their subject matter was not so emotionally charged as to preclude their admission. 
Compare Erazo, No. 2206-02, slip op. at 15-17. The probative value of the photos was not
substantially outweighed by any unfair prejudicial effect. Therefore, the trial court did not
abuse its discretion in overruling appellant's objections to the photos. Points of error four
through seven are overruled.

 In her eighth point of error, appellant claims the Texas death-penalty scheme violates
the due-process protections of the United States Constitution because the punishment issue
related to mitigation fails to require the State to prove the absence of sufficient mitigating
circumstances beyond a reasonable doubt, contrary to Apprendi v. New Jersey, 530 U.S. 466
(2000), and its progeny. We have previously rejected these identical contentions. Paredes
v. State, 129 S.W.3d 530, 541 (Tex. Crim. App. 2004); Resendiz v. State, 112 S.W.3d 541,
549-50 (Tex. Crim. App. 2003), cert. denied, 72 U.S.L.W. 3688 (May 3, 2004). Appellant
does not persuade us that these prior cases were wrongly decided. Point of error eight is
overruled.

 In point of error nine, appellant claims the trial court erred in denying her motion to set
aside the indictment for failure to allege all of the necessary elements of the offense in
violation of the Sixth and Fourteenth Amendments to the United States Constitution. Appellant
argued in her motion, and re-asserts now, that the punishment issues are elements of the crime
of capital murder that the State must allege in the indictment pursuant to Apprendi. We have
held that Apprendi does not compel the State to allege the punishment issues in the
indictment. Rayford v. State, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003). The trial court
did not abuse its discretion in denying appellant's motion. Point of error nine is overruled.

 In her tenth point of error, appellant claims the Texas death-penalty scheme violated
her due process rights and her right to be free from cruel and unusual punishment under the
United States Constitution by requiring at least ten "no" votes for the jury to return a negative
answer to the punishment issues. We have repeatedly addressed and rejected such claims. Id.;
Turner v. State, 87 S.W.3d 111, 118 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 965
(2003); Jackson v. State, 33 S.W.3d 828, 841 (Tex. Crim. App. 2000). Point of error ten is
overruled.

 In point of error eleven, appellant claims the Texas death-penalty scheme violated her
rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution
because of vague, undefined terms in the jury instructions at the punishment phase of the trial
that effectively determine the difference between a life sentence and the imposition of the
death penalty. Appellant complains of the trial court's failure to define "probability," "criminal
acts of violence," and "continuing threat to society." We have repeatedly rejected identical
claims. Rayford, 125 S.W.3d at 532; Chamberlain v. State, 998 S.W.2d 230, 237-38 (Tex.
Crim. App. 1999). Point of error eleven is overruled.

 In her twelfth point of error, appellant claims the Texas death-penalty scheme denied
appellant due process of law, and imposed cruel and unusual punishment in violation of the
Fifth, Eighth, and Fourteenth Amendments of the United States Constitution because of the
impossibility of simultaneously restricting the jury's discretion to impose the death penalty
while also allowing the jury unlimited discretion to consider all evidence militating against
imposition of the death penalty. Appellant relies on Justice Blackmun's dissenting opinion in
Callins v. Collins, 510 U.S. 1141 (1994) (Blackmun, J., dissenting). This argument has been
repeatedly rejected. Rayford, 125 S.W.3d at 532; Murphy v. State, 112 S.W.3d 592 (Tex.
Crim. App. 2003), cert. denied, 124 S.Ct. 1660 (2004); Chamberlain, 998 S.W.2d at 238. 
Points of error twelve and thirteen are overruled.

 In point of error fourteen, appellant claims the cumulative effect of her enumerated
constitutional violations denied her due process of law in violation of the Fifth and Fourteenth
Amendments of the United States Constitution. We have found no constitutional violations;
therefore, there can be no adverse cumulative effect. Point of error fourteen is overruled.

 In point of error thirteen, appellant asserts the same claim under Article I, §§ 13 and 19,
of the Texas Constitution that she asserts in her twelfth point of error. In point of error
fifteen, appellant asserts the same claim under Article I, § 19, of the Texas Constitution that
she asserts in her fourteenth point of error. Because appellant offers no separate argument or
authority in support of these state claims, they are not properly before us. Norris v. State, 902
S.W.2d 428, 446 n.22 (Tex. Crim. App. 1995); Heitman v. State, 815 S.W.2d 681, 690-91 fn.
23 (Tex. Crim. App. 1991). Points of error thirteen and fifteen are overruled.

 The judgment of the trial court is affirmed.


Delivered: September 22, 2004


Do Not Publish



 
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal
Procedure.